**NORRIS v. NORRIS.**

No. 10961.

Circuit Court of Appeals, Fifth Circuit.

Oct. 25, 1944.

Cubbedge Snow, of Macon, Ga., and Robt. L. Williams, of Orlando, Fla., for appellant.

E. P. Johnston and Wallace Miller, both of Macon, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

James R. Norris was an employee of the National Blank Book Company of Holyoke, Massachusetts. As such employee he was the owner of two group insurance certificates issued by the Aetna Life Insurance Company under the provision of a contract with the National Blank Book Company whereby it carried insurance coverage on its employees. Group policy No. 8497 was for $4,000. The second policy, being No. GA-201, was for $5,525.25.

On October 22, 1941, James R. Norris and his then wife, Donna C. Norris, while living in a state of separation with a divorce suit pending, entered into a written agreement with respect to the maintenance and support by the husband of the wife and children. On November 21, 1941 they were legally divorced. Soon thereafter James R. Norris and Alise B. Norris were legally married, and lived together as husband and wife until the death of James R. Norris.

On January 16, 1943, for a valuable consideration, Donna C. Norris executed and delivered to James R. Norris a general and complete release whereby Norris was relieved from further performance of the obligations contained in the final decree of divorce or from the performance of any other obligation whatever in favor of Donna C. Norris. In this release no reference was made to either of the life insurance policies referred to.

On January 14, 1943, Norris wrote the Aetna Life Insurance Company:

"Gentlemen: My policy with your company (Group Policy No. 8497, the amount being $4,000) as an employee of the National Blank Book Company, of Holyoke, Massachusetts, is attached for the purpose of having the name of the beneficiary changed. I was divorced from Donna Norris in 1941 and I have recently remarried. My wife's name is Alise Buford Norris. Will you therefore please make the necessary change? Many thanks."

To this letter the Aetna Company replied:

"Dear Mr. Norris: In accordance with our practice, your recent request for change of beneficiary under your Certifi-

cate No. 15 is being referred to the headquarters' of your company for attention. As you know, your employer sponsors the coverage and is responsible to us for the payment of the premiums. Furthermore, your employer maintains a record of all individuals covered, including beneficiaries, and it is necessary, of course, that this record be kept up-to-date. Within a few days your employer should furnish you with a form for signature to complete the change of beneficiary you desire."

The home office of the Aetna Life Insurance Company thereafter wrote its general agent at Springfield, Massachusetts:

"The following employee (James R. Norris) has requested a change of beneficiary in a letter addressed to the home office of our company. We have acknowledged the letter, stating that his request has been referred to his employer who will furnish him with a form on which to make formal application for the change. We have explained that the reason for this procedure is that the employer sponsors the coverage, is responsible to us for the payment of the premium and has a record of all those covered, which must be kept up-to-date. Attached is a designation of beneficiary card with a beneficiary report in triplicate in connection with this change. Please submit these to the employer for execution. The card and two copies of the beneficiary report should, of course, be returned to us when completed, while the third copy of the report may be retained by the employer until the change is authorized as a record of the beneficiary change requested."

Designation of beneficiary card was sent by the general agent to the employer, by the employer to James R. Norris, was signed by Norris, returned to the employer, and by the employer returned to the Aetna Company.

On March 20, 1943, James R. Norris wrote the National Blank Book Company the following letter in the form of an office memorandum:

"National Blank Book Company.

"Office Memorandum.

"To: Mr. Holman.

"Subject: Group Annuity Plan.

"From: Norris.

"Date: March 20, 1943.

"When I wrote to have the beneficiary changed on my insurance policy with the Aetna Company, covering the group insurance, I neglected to have the name changed on the Group Annuity certificate. Will you please have the Aetna Company make the change? It should be changed from Donna Norris to Alise B. Norris."

The contents of this office memorandum were immediately communicated over the telephone by the employer to the Aetna General Agent at Springfield, Massachusetts, and the memorandum was later filed by the employer with the home office of the Aetna Company, after the death of James R. Norris, who died suddenly while in apparently robust health on March 26, 1943.

The group annuity contract GA–201 contains the following provisions with respect to change by the insured of the beneficiary:

"The Employee, whether or not employment shall have terminated, may change his designation of beneficiary at any time or times by written request filed at the Home Office of the Insurance Company. Such change will take effect as of the date of execution of such request, whether or not the Employee be living at the time of such filing, but without prejudice to the Insurance Company on account of any payments made by it before receipt of such request at its Home Office."

The foregoing comprises substantially all the pertinent record evidence.

The office memorandum dated March 20, 1943, addressed to Mr. Holman of the National Blank Book Company and signed "Norris," was a written request executed by James R. Norris for a change of beneficiary in the group annuity certificate issued to him under the provisions of group annuity contract GA–201, and this written request was duly filed at the home office of the said Aetna Life Insurance Company.

█ The insured had been divorced from his wife and had married again, and after paying alimony to the divorced wife for about a year, had made a complete and final settlement of all his obligations to her of whatever character. Immediately upon consummation of this settlement, he requested insurance company to change the beneficiary in his group policy from the divorced to the present wife. This change was promptly made, and on March 20, two months later, discovering that he had neglected to have the beneficiary in his group annuity certificate changed, he followed the instructions of the company in its letter to him, by executing a written request for

the change and sending it to his employer for transmittal to the insurance company. He died suddenly, before the written request was actually filed with the home office.

The undisputed facts, as found in the record, show clearly an unmistakable intention on the part of the insured to change the beneficiary in his group annuity certificate. It was evidenced by his executing a written request for the desired change and by his putting into motion the machinery for its filing with the home office, by mailing it to his employer with instructions to have the insurance company make the change. We are of opinion and so hold that the insured did all that the contract of insurance required him to do in order to effectuate a change of beneficiary, and nothing remained to be done except the purely ministerial act of making a record of the change at the home office of the company. Without deciding whether the employer, National Blank Book Company, was the agent of the insurance company for the purpose of receiving from its employees requests for change of beneficiary and transmitting such requests to the home office of the company, it is manifest that insured in this case complied absolutely with the direction of the insurance company in giving notice of the desired change of beneficiary to his employer. Insured did all that was required of him to effect the change.

"An assignment would be valid whether noted on the policy or not, when the clear intention of the decedent to so proceed appeared, for the action of the company in making such an indorsement is ministerial in character. * * *" Kit v. Stecker, 3 Cir., 109 F.2d 281, 283. Beaver Trust Co. v. Kertis, 298 Pa. 322, 148 A. 471, 472; Cf. Skamoricus v. Konagiskie, 318 Pa. 128, 177 A. 809, 810.

Courts are liberal in construing a reserve power to change a beneficiary and will look to the purpose of the parties in making a change of designation. Insurance Law and Practice, Appleman, Volume 2, § 901, pp. 292, 293.

Where insured takes a positive action which evidences his obvious desire for a change of beneficiary, the courts will adopt such construction as will assist in carrying out such intention. Insurance Law and Practice, Appleman, Volume 2, § 963, p. 382.

We find no reversible error in the record, and the judgment is affirmed.