The **PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

John C. **STEPHENS, Jr., Administrator of the Estate of Margaret M. Alexander, Deceased, Ethel E. Ligen, and John W. Parker, Defendants.**

Civ. A. No. 80–90–NN.

United States District Court, E. D. Virginia, Newport News Division.

Oct. 15, 1980.

Lewis T. Booker, Hunton & Williams, Richmond, Va., Gregory N. Stillman, Hunton & Williams, Norfolk, Va., for plaintiff.

S. M. Franck, Williamsburg, Va., for Stephens, Adm. and Ligen.

Stephen D. Harris, McGuire, Woods & Battle, Williamsburg, Va., and L. T. Hamrick, Hamrick, Mauney & Flowers, Shelby, N. C., for Parker.

## OPINION AND ORDER

CLARKE, District Judge.

This matter comes to the Court on plaintiff Prudential Insurance Company of America's ("Prudential" or "the insurer") Bill of Complaint and Interpleader. The facts are undisputed. On May 16, 1975, Hillman J. Alexander obtained from Prudential a policy on his life in the amount of $4,000.00, naming Margaret M. Alexander, his wife, as the sole beneficiary. On July 20, 1976, Mr. Alexander assigned ownership of this policy to his wife. Prudential approved this assignment on July 30, 1976, and, on the same date, Hillman J. Alexander changed the beneficiary to "Margaret M. Alexander . . ., wife of the insured, if living, otherwise to the estate of said wife." Margaret M. Alexander died intestate on April 28, 1979, leaving Hillman J. Alexander as her sole heir. On May 3, 1979, before qualifying as the administrator of his wife's estate, Hillman J. Alexander executed a change of beneficiary Form 9082 in the presence of a Prudential agent, naming John W. Parker as the primary beneficiary of the policy in question. Prudential received this form and, on June 12, 1979, returned it to its local agent, accompanied by a memorandum indicating that another Form 9082 needed to be completed by the administrator or executor of Margaret M. Alexander's estate before the change of beneficiary could be processed. Mr. Alexander died on July 1, 1980, before receiving this information from Prudential's agent. On February 4, 1980, John C. Stephens qualified as the first administrator of Margaret M. Alexander's estate. He never attempted to change the beneficiary of the policy. Because of the conflicting claims against the policy, Prudential tendered the sum of $4228.90 payable under the policy to the registry of this Court, which sum was deposited in the registry by our Order of April 29, 1980.

The sole issue before this Court is whether Hillman J. Alexander's change of beneficiary was legally effective, thus entitling John W. Parker to the proceeds of the policy upon Mr. Alexander's death, or whether this change had no legal effect, thus entitling the estate of Margaret M. Alexander to the proceeds.

In Virginia, the general rule is that legal title to personal property of the deceased passes directly to the personal representative and that nothing passes to the

heirs or legatees until distribution by this representative. *See Broaddus v. Broaddus,* 144 Va. 727, 130 S.E. 794 (1925); *Strader v. Metropolitan Life Insurance Co.,* 128 Va. 238, 105 S.E. 74 (1920); *Brent v. Washington's Administrator,* 59 Va. (18 Gratt.) 526 (1868). By authorization of specific sections of the Code of Virginia, however, certain specific items of personal property may be transferred to the spouse or distributees of the deceased without the intervention of a duly qualified executor or administrator. *See* Va.Code § 6.1–71 (Cum.Supp.1980) (bank accounts not exceeding five thousand dollars); Va.Code §§ 64.1–123, –123.1, –124 to –127 (Repl.Vol.1980) (small amounts due from the State or from various governmental or private institutions, livestock and dead victuals, personal items of a householder that would have been exempt from his debts under section 34–26 if he were alive, and personal property of a householder engaged in agriculture that would have been exempt from his debts under section 34–27 if he were alive). Additionally, a decedent's legatee or distributee, after complying with certain statutory requirements, may transfer title to a motor vehicle and to certain vessels registered with the United States Bureau of Customs if there has been no qualification on the decedent's estate. Va.Code §§ 46.1–91 (Repl.Vol.1974), 64.1–123.2 (Repl.Vol.1980). Finally, it is provided that, prior to qualification, the powers of an executor or administrator are limited to providing for the burial of the decedent, payment of reasonable funeral expenses, and the performance of acts necessary to preserve the estate. *See Monroe v. James,* 18 Va. (4 Munf.) 194 (1814); Va.Code § 64.1–136 (Repl.Vol.1980).

At the time of her death, Margaret M. Alexander was the owner of the policy in question. At that moment, title to the policy passed to her administrator whenever he may qualify as such, not to her husband, Hillman J. Alexander, in his capacity as the sole heir of her estate. Although her husband was preferred by statute for appointment as administrator of her estate, he had to apply to qualify as administrator. Va. Code § 64.1–118 (Repl.Vol.1980). Because he never qualified, title to the policy never passed to him, and any act of dominion he exercised over the policy, other than those acts specifically permitted by statute, had no legal effect. A change of the beneficiary of a life insurance policy does not fall within the previously enumerated narrow categories of permitted acts. Furthermore, the contract itself provides that no change of beneficiary is effective until accepted by the insurer. The change of beneficiary submitted by Mr. Alexander was properly rejected by Prudential because Mr. Alexander lacked the legal authority to make such a change; acceptance of this change of beneficiary might have subjected Prudential to liability to the Estate of Margaret M. Alexander. Her estate had no qualified administrator until February 4, 1980, and this administrator never attempted to change the beneficiary of the policy. Accordingly, the attempted change of beneficiary by Hillman J. Alexander had no legal effect and, upon his death, the proceeds of the policy became payable to the Estate of Margaret M. Alexander.

In reaching this conclusion, this Court is aware that the equities appear to dictate that the proceeds of the policy should be distributed to John W. Parker. Hillman J. Alexander, had he been appointed as the administrator of his wife's estate, could have distributed the ownership of the policy to himself as sole heir and could then have effectively changed the beneficiary of the policy. His clear intent was to make Mr. Parker the beneficiary. Mr. Alexander's untimely death prevented him from carrying out his intent; he probably would have corrected the problem of his failure to qualify when informed that a problem existed.

In *United Services Life Insurance Co. v. Moss,* 303 F.Supp. 72, 75–76 (W.D.Va.1969), the court determined that Virginia would follow a liberal view, based on equitable principles, when dealing with the effectiveness of a change of beneficiary. Under this view, "[e]quity regards as done which should have been done and if the insured has done all he could to comply with the provisions of the policy, equity will give

effect to the intent of the insured." *Id.* at 76. *See also Minnesota Mutual Life Insurance Co. v. Rupe*, 163 F.Supp. 352, 354 (S.D. W.Va.1958) (substantial compliance with terms of policy is enough to effectuate a change of beneficiary). Because the contractual prerequisites to a valid change of beneficiary are for the benefit of the insured, the rule that only substantial, but not strict, compliance is necessary for an effective change of beneficiary applies with even more force when, as is the case here, the company brings an interpleader action and pays the proceeds of the policy into the court. *See Provident Life & Accident Insurance Co. v. Dotson*, 93 F.Supp. 538 (S.D. W.Va.1950); *Gill v. Provident Life & Accident Insurance Co.*, 131 W.Va. 465, 48 S.E.2d 165 (1948). The cases establishing these principles of equity, however, differ from the case at bar in one very important aspect. In all these earlier cases, the courts were faced with an attempted change of beneficiary executed by an individual who had the power to make such a change but did not comply with all the provisions of the policy; in the instant case, Mr. Alexander never acquired the power to change the beneficiary on the policy owned by his wife.

The facts of the case at bar closely parallel those in *Occidental Life Insurance Co. v. Row*, 271 F.Supp. 920 (S.D.W.Va. 1967). The court there held that a change of beneficiary executed by the executor of an estate was valid despite the executor's failure to have himself appointed as such prior to the change of beneficiary. The crucial difference, however, between *Occidental* and the instant case is that in *Occidental* the executor was appointed a few days prior to his death. *Id.* at 922. Thus, the *Occidental* court was able to apply the well accepted doctrine of relation back and find that the subsequent qualification validated all intermediate acts, relating to the estate, that the executor rightfully could have performed had he already been qualified. In the instant case, Hillman J. Alexander never qualified as the personal representative and we therefore cannot apply the doctrine of relation back to validate his acts.

This Court therefore finds itself compelled to award the proceeds of the policy to the Estate of Margaret M. Alexander. Such a holding may appear inequitable where the preferred administrator of an estate is also the sole heir. This Court, however, cannot create an additional exception to the unequivocal language of the statutes of Virginia; the creation of such an exception remains at the sole discretion of the state legislature.

Accordingly, the Clerk is ORDERED to pay the sum of $4228.90, which sum was deposited in the registry of this Court on April 29, 1980, plus accrued interest, to John C. Stephens, Jr., Administrator of the Estate of Margaret M. Alexander. In its Bill of Complaint and Interpleader, Prudential petitioned this Court for its costs and attorneys' fees. Prudential's involvement in the case at bar amounted to no more than a filing of this bill; the matter was a relatively simple one and was litigated between the two interested parties. Accordingly, Prudential's request is DENIED.